2003 VT 98

**In re Jerome WASHINGTON**

[838 A.2d 87]

No. 02-330

¶ 1. October 16, 2003. Petitioner, Jerome Washington, appeals from a superior court order denying his petition for post-conviction relief. The issue on appeal is whether the superior court's conclusion that petitioner received effective assistance of counsel at his sentenc-

ing hearing is supported by the record. We conclude that it is and affirm.

¶ 2. In 1993, petitioner was tried in state and federal court on charges of murder, attempted murder and aggravated assault, arising out of a 1992 incident in Burlington that resulted in the death of Melissa Wells, and the shooting of Chance Marden and Matthew Petrie. In state court, petitioner was represented by attorney Ben Joseph. As part of preparation for trial, counsel and his investigators interviewed petitioner's family members and an Arizona defense attorney who had represented petitioner on serious felony charges there. As a consequence of these interviews, counsel referred petitioner to Dr. Henry Payson for a mental health evaluation. Petitioner refused to answer any of Dr. Payson's questions, and cooperated only to a limited extent with Dr. Massad — a psychologist to whom Dr. Payson referred him. Following these examinations, counsel requested a court-ordered competency exam that was conducted by Dr. John Ives. Petitioner cooperated fully with Dr. Ives, and Dr. Ives found petitioner competent to stand trial.

¶ 3. Throughout preparation for trial, petitioner was adamant that he did not shoot the victims and that they all were alive and well when he left the scene. Moreover, petitioner continually refused to cooperate with counsel's efforts to explore the possibility of presenting an insanity defense at trial. It was the State's theory of the case that petitioner shot the victims because Chance Marden had given the State evidence against petitioner's brother, Jacob Washington, who was awaiting trial on federal drug charges. Counsel knew petitioner was aware of the State's theory and came to believe that petitioner was uncooperative in exploring an insanity defense because this defense would require petitioner to admit that he committed the shootings, an admission that might harm his brother in his federal case. At petitioner's

trial, counsel followed his client's directions and did not present any evidence to show that petitioner was suffering from mental illness at the time of the offenses. As a trial strategy, counsel argued that petitioner was not the shooter, but the jury convicted petitioner of first-degree murder, attempted murder, and aggravated assault.

¶ 4. Petitioner's sentencing hearing was held on July 26, 1993 before Judge Brian Burgess. At this hearing, counsel noted that petitioner continued to maintain his innocence, requested that the court consider the fact that petitioner had a very unusual personality, argued that the aggravating factor of multiple victims should not apply, and requested that petitioner receive the minimum sentence of thirty-five years to life. The court found, as a mitigating factor, that petitioner had no significant prior criminal history, but went on to find that this and petitioner's unusual personality were outweighed by two aggravating factors — that the murder occurred during the commission of a felony and that it was a predatory murder. Petitioner was subsequently sentenced to life imprisonment without parole for the murder conviction and two consecutive sentences of fifteen-to-twenty years and ten-to-fifteen years for the attempted murder and aggravated assault convictions. This Court affirmed those convictions in *State v. Washington*, 164 Vt. 609, 669 A.2d 550 (1995) (mem.).

¶ 5. Three years later, petitioner filed a pro se petition for post-conviction relief (PCR) under 13 V.S.A. § 7131 averring that his state convictions and sentence were the result of ineffective assistance of counsel. Following this filing, petitioner was assigned PCR counsel, and counsel amended the petition. The amended petition alleged that petitioner was incompetent to stand trial in 1993 and that, for various reasons, petitioner received ineffective assistance of counsel both at trial and at sentencing. Specifi-

cally relevant to this appeal, petitioner claimed counsel provided ineffective assistance at the sentencing hearing because he failed to present character and psychological evidence to show additional mitigating factors.

¶ 6. In 2001, a six-day PCR hearing was conducted in the Chittenden Superior Court. During the PCR hearing, the court heard testimony from several expert witnesses. Attorney Richard Rubin and psychologist Dr. Philip Kinsler testified on behalf of petitioner. Mr. Rubin stated that "the representation Mr. Washington received at sentencing amounted to essentially no representation at all." Dr. Kinsler explained that, based on a retrospective review of petitioner's condition conducted in 1997, petitioner was not competent to stand trial in 1993 and evidence of petitioner's mental disorders could have been presented as a mitigating factor at petitioner's sentencing hearing. The State countered with its own experts: attorney Norman Blais and psychiatrist Dr. John Ives. Mr. Blais testified that counsel's representation of petitioner at the sentencing hearing was reasonably effective. Dr. Ives responded to Dr. Kinsler's testimony and reiterated his conclusion that petitioner had been competent to stand trial. Considering the case in its entirety, the superior court rejected all of petitioner's claims for post-conviction relief. This appeal followed.

¶ 7. On appeal, petitioner disputes the court's conclusion that petitioner opposed presentation of mental competency information at sentencing as not supported by the findings and argues that counsel rendered ineffective assistance as a matter of law because he failed to offer the mental competency evidence.

¶ 8. When considering a PCR appeal, we review the superior court's findings of fact under the clearly erroneous standard. *In re Dunbar*, 162 Vt. 209, 211, 647 A.2d 316, 319 (1994) (citing *State v. Bristol*, 159 Vt. 334, 336, 618 A.2d 1290, 1291

(1992)). If conclusions follow from the findings they must be affirmed. *Id.* To be granted post-conviction relief, the petitioner must show "by a preponderance of the evidence that one or more fundamental errors rendered his conviction defective." *In re Hemingway*, 168 Vt. 569, 570, 716 A.2d 806, 809 (1998) (mem.). Further, when petitioner is seeking post-conviction relief based on a claim of ineffective assistance of counsel he must demonstrate first "that counsel's performance fell below an objective standard of reasonableness informed by prevailing professional norms" and second, "that counsel's deficient performance prejudiced the defense." *Dunbar*, 162 Vt. at 212, 647 A.2d at 319 (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)); see also *In re Pernicka*, 147 Vt. 180, 183, 513 A.2d 616, 618 (1986) (quoting same). In looking at the evidence, we are not permitted to use hindsight to evaluate counsel's conduct; "rather, we must look to whether such decisions were within the range of competence demanded of attorneys in a criminal case at that time." *In re Mercier*, 143 Vt. 23, 32, 460 A.2d 472, 477 (1983). In this case, the trial court concluded that petitioner had proved neither prong of the ineffective-assistance-of-counsel standard.

¶ 9. Petitioner's first argument relates to the court's conclusion that petitioner refused to allow counsel to use his mental health as a mitigating factor at sentencing. Petitioner alleges that the conclusion is not supported by findings. During oral argument he added that the conclusion is not supported by the evidence. We reject both contentions.

¶ 10. The court's findings stated: "Mr. Washington adamantly refused to cooperate in the preparation of any mental health defense, either as a defense or in mitigation." The conclusions reiterated this finding, amplifying that the refusal included "mitigation at sentencing." We believe that the conclusion is adequately supported by the finding, particularly

because the only mitigation opportunity was at sentencing. In any event, the conclusion is itself a finding of fact, valid even if mislabeled as a conclusion of law. *In re Hatten*, 156 Vt. 374, 378, 592 A.2d 896, 898 (1991). We also conclude that the finding was supported by the testimony of counsel and is entirely consistent with petitioner's actions while the criminal case was pending.

¶ 11. For three reasons, we reject petitioner's broader contention that counsel rendered ineffective assistance as a matter of law by failing to show petitioner's mental health in mitigation of sentence. All flow from the court's conclusion that petitioner refused to allow such evidence to be presented. First, control over whether mental illness could be used to reduce sentence properly resided with the client rather than counsel. We held this directly with respect to an insanity defense in *State v. Bean*, 171 Vt. 290, 301, 762 A.2d 1259, 1267 (2000). The *Bean* rationale also applies to sentencing.

¶ 12. Second, *Strickland v. Washington* holds that "when a defendant has given counsel reason to believe that pursuing certain investigations would be . . . harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Strickland*, 466 U.S. at 691. Here, petitioner gave counsel reason to believe that any mental health theory would have been harmful to petitioner's brother, and as a result to petitioner, because to be effective it would have required that petitioner admit that he committed the offense to protect the brother to defeat the federal drug charges against him. Consistent with *Strickland*, the State's expert witness testified that counsel did not render ineffective assistance when he followed petitioner's direction not to show his mental health in mitigation of sentence. Thus, even if petitioner did not fully control the decision on what mitigation factors to pursue at sentencing, counsel's decision to follow his client's direction cannot be found to be ineffective assistance as a matter of law.

¶ 13. Third, petitioner must prove not only that counsel rendered ineffective assistance, but also that there is a "reasonable probability" that effective assistance would have produced a different result. *Dunbar*, 162 Vt. at 212, 647 A.2d at 319. Although counsel had evidence that petitioner's mental condition might have affected his responsibility for the crimes, he was far from being able to prove that petitioner's "mental . . . condition . . . significantly reduced his . . . culpability for the murder," the relevant sentence mitigation standard. 13 V.S.A. § 2303(e)(2). To demonstrate the applicability of that standard, counsel would have needed petitioner's cooperation in a comprehensive mental health examination. As the superior court found, petitioner would not cooperate in such an evaluation. This finding, in turn, supports the superior court's conclusion that there is no reasonable probability that pursuit of sentence mitigation based on petitioner's mental condition would have made a difference in his sentence.

*Affirmed.*